IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA and REGENXBIO INC., <br><br> Plaintiffs, <br><br> v. <br><br> SAREPTA THERAPEUTICS, INC. and SAREPTA THERAPEUTICS THREE, LLC, <br><br> Defendants. | C.A. No. 20-1226 (RGA) <br><br> **JURY TRIAL DEMAND** |

**STIPULATION AND [PROPOSED] ORDER RE:
DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

The parties hereby stipulate to the following procedures concerning the discovery and production of electronically stored information:

I. **General Provisions**

a. **Proportionality.** Subject to and consistent with Federal Rule of Civil Procedure 26(b)(1), parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

b.    **Preservation of Discoverable Information**.  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. The parties agree as follows:

i.    Absent a showing of good cause by the requesting party, the parties agree that they shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

ii.   Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**II.    Privilege**

a.    The parties agree that they will negotiate in good faith whether a privilege log is needed for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine and/or any other applicable privilege. The parties also agree to negotiate the format of any privilege log, to the extent one is needed. To the extent a privilege log is needed, the parties agree that they are not required to include on any privilege logs any privileged information generated after the filing of the complaint in this case. The parties also agree that they are not required to include on any privilege logs, activities undertaken in compliance with the duty to preserve information per Fed. R. Civ. P. 26(b)(3)(A) and (B). The parties further agree that in logging email correspondence, only the last email in an email string needs to be logged, but that the log will expressly disclose all authors of emails in the string and all recipients of emails in the string.  For the avoidance of doubt, email strings that are not fully encompassed within another email string must be separately logged. The parties agree to further

confer on the nature and scope of privilege logs for the case at least one month prior to date provided in the Scheduling Order for the substantial completion of document production, to discuss whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

### III. Initial Disclosures

Pursuant to the Court's Scheduling Order (D.I. 44), on March 9, 2022, the parties made their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and made their disclosures required by paragraph 3 of the Default Standard for Discovery for the District of Delaware.[2]

### IV. Specific E-Discovery Issues

a. **On-site inspection of electronic media**. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause and agreement by the party to whom the on-site inspection of electronic media is requested. If agreement cannot be reached, the requesting party may seek an order from the Court requiring such on-site inspection of electronic media with the requesting party having the burden of proving the specific need and good cause.

b. **Search Methodology**:

i. If the producing party elects to use search terms to locate potentially responsive ESI, the producing party shall disclose the search terms to the requesting party. Absent a showing of good cause, the requesting party may propose a list of 10 terms or search strings to be used in this litigation (irrespective of any other terms the producing party may employ to locate documents

---

[2] The parties do not concede that any disclosures served prior to this filing were sufficient to comply with Federal Rule of Civil Procedure 26(a)(1) and paragraph 3 of the Default Standard for Discovery. The parties reserve their rights to challenge any such disclosures or amendments thereto.

for potential use in the litigation).  Focused terms or search strings, rather than over-broad terms (e.g., product and company names), shall be employed.  The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not discoverable under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.  Upon agreement, the producing party shall search (i) the non-custodial data sources identified in their Default Standard Paragraph 3 initial disclosures at paragraph 3(b); and (ii) email and other ESI maintained by the custodians identified in their Default Standard Paragraph 3 initial disclosures at paragraph 3(a).

        ii.        Each party need only to produce a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians or sources, provided that a field for duplicate custodians is created and populated so that the metadata for each document indicates all of its custodians regardless of removal of duplicate documents. If a party is unable to capture duplicate custodial metadata in a field, custodians must be apparent from the face of de-duplicated documents (e.g., emails showing sender and recipients in the TO, FROM, CC, and BCC field in the email header. To the extent that de-duplication through MD5 or SHA- 1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

        iii.        The parties will also discuss other reasonable restrictions on the production of electronically stored information, including reasonable date range limitations.

        c.        **Format**.  ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF).  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.  The parties shall produce

their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata. If the need to view a particular document in color arises, a party may request production of color JPEG images for the document and the producing party shall comply to the extent such requests are reasonable.

      d.      **Native files**.  Files not easily converted to image format, such as Excel and Access files, shall be produced in native format.

      e.      **Metadata fields**.  The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, All Custodian, Confidentiality Designation, Conversation Index, Email Subject, From, To, CC, BCC, Filename, Author, Date Sent, Time Sent, Date Received, Time Received, Date Created, Date Modified, MD5 Hash, File Extension, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

**STIPULATED AND AGREED TO:**

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | FISH & RICHARDSON P.C. |
| /s/ *Derek J. Fahnestock* | /s/ *Susan E. Morrison* |
| Jack B. Blumenfeld (#1014)<br>Derek J. Fahnestock (#4705)<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@morisnichols.com<br>dfahnestock@morrisnichols.com<br><br>Andrew M. Berdon (*pro hac vice*)<br>Robert B. Wilson (*pro hac vice*)<br>James E. Baker (*pro hac vice*)<br>Quinn Emanuel Urquhart & Sullivan LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>andrewberdon@quinnemanuel.com<br>robertwilson@quinnemanuel.com<br>jamesbaker@quinnemanuel.com<br><br>Charles E. Lipsey<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA 20190-2700<br>(571) 203-2700<br>charles.lipsey@finnegan.com<br><br>William B. Raich, Ph.D.<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>901 New York Avenue, NW<br>Washington, D.C. 20001-4413<br>(202) 408-4000<br>william.raich@finnegan.com<br><br>Attorneys for Defendants<br>*Sarepta Therapeutics, Inc., and*<br>*Sarepta Therapeutics Three, LLC* | Susan E. Morrison (#4690)<br>Fish & Richardson P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19801<br>Tel: 302-652-5070<br>morrison@fr.com<br><br>Brian D. Coggio (*pro hac vice*)<br>Jeremy T. Saks (*pro hac vice*)<br>Fish & Richardson P.C.<br>7 Times Square, 20th Floor<br>New York, NY 10036<br>Tel: (212) 765-5070<br>coggio@fr.com<br>saks@fr.com<br><br>Kurt L. Glitzenstein (*pro hac vice*)<br>J. Peter Fasse (*pro hac vice*)<br>Fish & Richardson P.C.<br>One Marina Park Drive<br>Boston, MA 02210<br>Tel: (617) 542-5070<br>glitzenstein@fr.com<br>fasse@fr.com<br><br>Attorneys for Plaintiff<br>*REGENXBIO Inc* |

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Kelsey A. Bomar*
John V. Gorman (#6599)
Kelsey A. Bomar (#6641)
Morgan, Lewis & Bockius LLP
120 N. Market Street, Suite 2201
Wilmington, DE  19801
Tel:  (302) 574-3000
john.gorman@morganlewis.com
kelsey.bomar@morganlewis.com

Julie S. Goldemberg (*pro hac vice*)
Eric Kraeutler (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921
Tel:  (215) 963-5095
julie.goldemberg@morganlewis.com
eric.krautler@morganlewis.com

Janice H. Logan (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  (202) 739-3000
janice.logan@fr.com

Attorneys for Plaintiff
*The Trustees of the University of Pennsylvania*

Dated: August 30, 2022

SO ORDERED this  31   day of        August        , 2022.

/s/ Richard G. Andrews
UNITED STATES DISTRICT JUDGE

7

**SCHEDULE A**

1. Deleted, slack, fragmented, or other data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last opened dates.
5. Automatically saved versions of documents and emails.
6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.
7. Voice messages, text messages, and instant messages.
8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such information is routinely saved elsewhere.
9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.
10. Logs of calls made from mobile devices.
11. Server, system or network logs.
12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.
13. Data remaining from systems no longer in use that is unintelligible on the systems in use.